UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

MMG Insurance Company

     v.                                    Civil No. 11-cv-430-JL
                                         Opinion No. 2013 DNH 084P

Samsung Electronics
America, Inc. and
Best Buy Co., Inc.


**MEMORANDUM ORDER**

The parties have filed a number of motions to exclude evidence from the upcoming trial of this action, which arises out of a house fire that allegedly started in a home theater system manufactured by defendant Samsung Electronics America, Inc., and sold by defendant Best Buy Co., Inc.  By way of subrogation, plaintiff MMG Insurance Co., which insured the house and its contents, seeks to recover against the defendants for the property damage that its policyholders, Mark and Helen Berthiaume, suffered in the fire, bringing state-law claims of negligence, strict products liability, and breach of warranty.

This court has jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity).  The underlying facts of this case are set forth in detail in this court's prior order denying the defendants' motions to preclude two of MMG's designated expert witnesses from

testifying at trial, and related motion for summary judgment.
MMG Ins. Co. v. Samsung Elecs. Am., Inc., 2013 DNH 061.

The defendants have now moved to exclude evidence of burn
testing that one of those expert witnesses, Steven Thomas, claims
to have performed in reaching his conclusion that the Samsung
home theater unit was the cause of the fire.  MMG, for its part,
moved to exclude a video of burn testing performed by the
defendants' expert witness, Lawrence Sacco, then amended that
motion to request re-opening Sacco's deposition instead.  For the
reasons fully explained below, the defendants' motion to exclude
evidence of Thomas's burn testing is granted, while MMG's motion
to re-open Sacco's deposition is denied.

Thomas failed to mention any burn testing in his expert
report, and, even if that omission were harmless in light of his
reference to the testing in his deposition testimony, that
testimony fails to show that Thomas performed the testing
according to reliable principles and methods.  See Fed. R. Evid.
702.  Sacco's expert report, in contrast, disclosed the existence
of a video of the burn testing that he conducted.  While the
video was mistakenly omitted from the version of the report
provided to MMG prior to Sacco's deposition, that mistake was
corrected when the video was produced at the deposition itself,
and the defendants' failure to provide MMG with a copy of the

2

video until two weeks before trial does not justify re-opening Sacco's deposition, as MMG now seeks to do.

As further explained below, the court also grants the defendants' motion to exclude from trial any reference to other fires allegedly caused by similar Samsung products.  The only "evidence" of these fires is in the form of comments purportedly posted by consumers on third-party Internet sites.  These reports are inadmissible hearsay, see Fed. R. Evid. 802, and fail to provide a good-faith basis for cross-examining the defendants' expert (who developed his opinion without relying on the reports or the incidents they reference).  Furthermore, exposing the jury to the substance of the otherwise inadmissible, and inherently unreliable, reports through such cross-examination would unfairly prejudice the defendants.  See Fed. R. Evid. 403.

Finally, MMG's motion to prevent the defendants from using the deposition testimony of a fire investigator, Robert Long, who examined the scene on MMG's behalf, is denied.[1]  As explained fully below, MMG has admitted that Long is unavailable to appear at trial, which is sufficient, in and of itself, to permit the use of his deposition.  See Fed. R. Civ. P. 32(a)(4)(B).

---

[1]The defendants also moved to exclude any expert testimony by Long.  This motion is granted by assent, since MMG has since disclaimed any intention to present any expert testimony--or, indeed, any testimony at all--from Long at trial.

I.   **Burn testing evidence**

  A.   **Thomas's testimony**

MMG disclosed Thomas, a forensic engineer, as an expert witness, and provided the defendants with a report from him.  The report states his conclusion that "the subject fire was caused as a result of a component failure/overheating of the power supply" in the Samsung home theater unit.

At Thomas's subsequent deposition, he identified the DVD tray in the unit as "a competent first material ignited" in the fire.  He denied knowing "specifically what type of material" comprised the tray, but testified that he had "attempted to burn that plastic" on an exemplar of the unit, and that "it lit and maintained a fire."  Thomas further testified at his deposition that he knows another component of the unit, a printed circuit board "will maintain combustion when exposed to ignition," because he "burned a portion of it" with a flame generated from "a propane flame source."

While Thomas's report states that an exemplar "was purchased and subjected to some basic testing," the testing described in the report was limited to determining the voltage and temperature of the unit's power supply in different modes of operation.  The

report makes no reference to Thomas's attempts, related at his deposition, to set fire to various components of the unit.

The defendants have now moved to preclude Thomas from testifying at trial as to his claimed "burn testing" of the DVD tray.  Under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure, a party intending to offer the testimony of an expert must provide a written report containing, among other things, "a complete statement of all the opinions the witness will express at trial and the basis and reasons for them."  As just discussed, Thomas's report does not disclose that he attempted, and succeeded in, setting fire to the DVD tray and circuit board from an exemplar of the Samsung home entertainment system, even though, as his deposition testimony revealed, that "burn testing" was among the "bas[es] and reasons" for his opinion that a "failure/overheating of the power supply" within the system started the fire at issue.  So Thomas's report did not comply with Rule 26(a)(2)(B).

When a party "fails to provide information . . . as required by Rule 26(a)," a party is "not permitted to use that . . . information . . . at a trial unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).  MMG suggests that the omission of the "burn testing" from Thomas's report was "harmless" because Thomas mentioned the

5

"burn testing" at his deposition.[2]  Generally, however, "Rule
26(a)(2) does not allow parties to cure deficient expert reports
by supplementing them with later deposition testimony," or the
function of expert reports would be "completely undermined."
Ciomber v. Coop. Plus, Inc., 527 F.3d 635, 642 (7th Cir. 2008);
see also Walter Int'l Prods., Inc. v. Salinas, 650 F.3d 1402,
1413 (11th Cir. 2011) ("The reason for requiring that an expert
report be provided before a deposition is taken is so that the
opposing party can use the report to examine the expert at the
deposition.").

     While there are undoubtedly instances when an expert's
deposition testimony renders a deficiency in his report
"harmless" under Rule 37(c)(1), see, e.g., Smith v. Tenet
Healthsys. SL, Inc., 436 F.3d 879, 889 (8th Cir. 2006), this is
not one of them because, even at his deposition, Thomas did not
describe the burn testing in any detail.  As to the circuit
board, Thomas said simply that he burned a portion of it with a
flame generated from a "propane flame source," without
identifying the temperature or "amount of heat."  Thomas offered
even less as to the burn testing of the DVD tray, only that "it

---

[2]MMG does not suggest that the omission of the burn testing
from Thomas's report was "substantially justified," and the court
can discern no basis for such an argument in the record.

lit and maintained a fire" when he tried to burn it--and that he "saw no need" to make any record of this process because "I'm the person that did the analysis . . . and I wrote my opinions based upon my understanding of the way this thing works."[3]

As to the burn testing, then, Thomas's deposition testimony did not relay the "complete statement of all opinions . . . and the basis and reason for them" that should have been included in his expert report under Rule 26(a)(2)(B)(i). Crucially, he did not disclose any details of the testing (such as the temperature of the flame, or the duration of its exposure to the components) that could serve to explain how the testing supports his opinion that the fire started when the power supply in the Samsung unit caused its DVD tray to ignite. To the contrary, Thomas acknowledged that the heat and temperature generated by the propane source he used in his testing would differ from those he believes were generated by the power supply within the unit.

---

[3]During an off-the-record discussion at the final pretrial conference, MMG suggested that the defendants were to blame for the limited nature of the information on the burn testing that Thomas conveyed at his deposition, because they failed to thoroughly examine him on that point. This court has previously rejected a like attempt at "effectively shift[ing] the responsibility to ensure adequate expert reports from the party seeking to call those experts to its adversary." Adams v. J. Meyers Builders, Inc., 671 F. Supp. 2d 262, 271 (D.N.H. 2009).

So Thomas's deposition testimony did not cure his report's failure to disclose the burn testing as one of the bases of his opinion as to the cause of the fire. Because MMG failed to disclose the burn testing as required by Rule 26(a)(2)(B), and because that failure was not substantially justified or harmless, "the baseline rule" that this court applies as "the required sanction in the ordinary case is mandatory preclusion." Harriman v. Hancock County, 627 F.3d 22, 29 (1st Cir. 2010) (quotation marks and bracketing omitted). In deciding whether to impose that remedy, the court of appeals has endorsed considering "an array of factors," including "the sanctioned party's justification of the late disclosure; the opponent-party's ability to overcome its adverse effects (i.e., harmlessness); the history of the litigation; the late disclosure's impact on the district court's docket; and the sanctioned party's need for the precluded evidence." Id. (citing Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 76 (1st Cir. 2009)).

Here, weighing these factors does not suggest that this court should eschew the "baseline rule" and impose any remedy other than precluding the challenged testimony. As already noted, MMG has not offered any justification for omitting the burn testing from Thomas's expert report, see note 2, supra, and the omission was not harmless, because, at a minimum, it

prevented the defendants from effectively questioning Thomas about the testing at his deposition, <u>see</u>, <u>e.g.</u>, Walter Int'l Prods., 650 F.3d at 1413.  The harm to the defendants is compounded by the fact that, as Thomas acknowledged at his deposition, he made no notes or other contemporaneous record of the testing, leaving the defendants at the mercy of his memory should they attempt to re-open his deposition for that purpose. Resorting to that measure at this late date, moreover, would almost certainly necessitate a continuance of the trial, adversely affecting this court's docket.  Finally, although preventing Thomas from referring to his burn testing might make his opinion as to the cause of the fire less compelling, it will not "obviously or automatically result in dismissal" of MMG's case, so its need for the evidence does not weigh strongly against preclusion either.  See Harriman, 627 F.3d at 32.

After due consideration of the applicable factors, this court finds that preventing Thomas from referring to the burn testing at trial is the appropriate remedy for his omission of that testing from his expert report.  See Nelson v. Freightliner LLC, No. 01-266, 2003 WL 25781423, at *2 (M.D. Fla. Apr. 23, 2003) (rejecting a belated attempt to augment an expert's disclosed opinion with evidence of testing that was omitted from her report, and excluding that evidence from trial).

9

The court also rules that MMG cannot introduce evidence of Thomas's burn testing for another, independent reason:  MMG has failed to show that the testing conforms to "reliable principles and methods." Fed. R. Evid. 702(c).  As already discussed, Thomas does not know the temperature or "the amount of heat" produced by the "propane flame source" that he used to ignite the components of the exemplar Samsung unit--only that the flame would <u>not</u> create the same "amount of heat" or temperature as the power source he has identified as igniting the other components of the unit.  Nor, again, did Thomas maintain any notes or contemporaneous records of this testing that could potentially show the soundness of his methodology.  To the contrary, the record of the testing consists solely of his deposition testimony, which shows only that the DVD tray and the circuit board "lit and maintained a fire" after Thomas held them to a flame of unspecified intensity for an unspecified duration.

As the party seeking to have Thomas testify that the burn testing supports his conclusion as to the cause of the fire, MMG bears the burden of showing that the testimony satisfies Rule 702.  See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 592 (1993).  Because, as just discussed, MMG has failed to carry that burden, Thomas cannot testify to the burn testing at trial, even if his failure to disclose that testing in his report is

10

overlooked.  The defendants' motion to exclude that testimony
from trial is granted.

### B.    Sacco's burn testing

The defendants' expert witness, Sacco, also conducted burn
testing on an exemplar of the home entertainment unit as part of
his work in this matter.  Unlike Thomas, though, Sacco disclosed
the testing in his expert report, where he stated that he:

> tested the self-extinguishing characteristic of the
> power supply circuit board of one of the exemplars.  A
> known, controlled and predictable source of heat energy
> and flame, commonly known as the [Underwriters
> Laboratories] burn pill, was ignited.  The heat energy
> and flame temperature were subjected to [*sic*] the
> circuit board.  The circuit board self-extinguished and
> did not propagate the flame across the board.  The
> video of this testing is part of this report.

The video, however, was not in fact included in the version of
Sacco's report that the defendants produced to MMG in September
2012.  Counsel for MMG did not bring this to the defendants'
attention until Sacco's deposition, in January 2013.  Then, Sacco
stated that, while he thought he had included a copy of the video
with the version of the report he had produced, he had also
brought the video to the deposition with him.  Counsel for MMG
did not ask to view the video during the deposition (even though
a DVD player was also present), nor did he ask to suspend the
deposition because he had yet to receive a copy of the video.

11

Counsel for MMG merely asked the defendants to provide a copy of the video, and they agreed.

The defendants did not provide a copy of the video to MMG until May 24, 2013.[4]  But, after initially asking for a copy of the video at Sacco's deposition in January 2013, MMG had not renewed this request until the final pretrial conference on May 21, 2013--even though the defendants listed the "Video of burn testing performed by Lawrence Sacco" as one of their trial exhibits on their final pretrial statement, filed on May 3, 2013.

On May 30, 2013 (barely a week before trial is scheduled to commence, and more than seven months after the close of discovery), MMG filed a motion asking that the defendants "produce Sacco for a discovery deposition prior to trial" on the grounds that the defendants' "delay in producing Sacco's recorded testing prejudices [MMG] because it has been deprived of the

---

[4]Although, on that day, the defendants provided MMG with a disc containing video files, counsel for MMG was unable to open or view them, despite repeated attempts, until May 29, 2013.  The day before that, on May 28, 2012, MMG filed a motion to prevent the defendants from introducing the video at trial, arguing that it "was never produced."  The court considers this request withdrawn in light of MMG's subsequently filed "amended motion regarding" the video, which asks solely to re-open Sacco's deposition but, in any event, MMG would not be entitled to the exclusion of the video at trial either, for the reasons discussed infra this section.

opportunity to question [Sacco] about the testing."  This
assertion is unpersuasive.

Because MMG has already taken Sacco's deposition, it may not
re-open the deposition without leave of court.  See Fed. R. Civ.
P. 30(a)(2)(A)(ii).  The court "must grant leave to the extent
consistent with Rule 26(b)(2)," id., which authorizes limits on
discovery if it is "unreasonably cumulative or duplicative," if
"the party seeking discovery has had ample opportunity to obtain
the information by discovery in the action," or if "the burden or
expense of the proposed discovery outweighs its likely benefit,"
Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii).

These factors all counsel against re-opening Sacco's
deposition.  Because, as already noted, the burn testing was
described in detail in Sacco's report, which was produced several
months in advance of his deposition, MMG had ample opportunity to
question him about the testing then, so allowing a second
deposition for that purpose would be unreasonably duplicative.
Furthermore, there is little or no likely benefit to it that
could even potentially outweigh the significant burden that the
defendants would face in producing their expert witness for a
deposition during the final week before trial, when, presumably,
defendants' counsel are busy preparing to try the case.

These conclusions readily follow from two facts.  First,
MMG's counsel has now seen the video of the testing (which is
three minutes long), yet MMG does not identify anything in it
that comes as a surprise in light of Sacco's description of the
testing in his expert report.

Second, MMG learned of the existence of the video in
September 2012, yet its only effort to secure a copy of it
between then and the eve of trial was a single request at Sacco's
deposition in January 2013 (where, it bears repeating, the video
was physically present and available for viewing).  Indeed,
despite not having received a copy of the video, MMG did not
properly object to the defendants' intention, announced in their
final pretrial statement, to use it as an exhibit at trial.  See
L.R. 16.2(d) (requiring objections to exhibits to be filed no
more than 14 days after service of the final pretrial statement).
This lengthy period of indifference toward the video, beginning
at Sacco's deposition itself, belies MMG's assertion that the
video is in fact so important that it justifies re-opening
Sacco's deposition the week before trial.  Cf. Daigle v. Me. Med.
Ctr., Inc., 14 F.3d 684, 692 (1st Cir. 1994) (upholding the use
of a deposition at trial, despite the fact that the deposition
ended upon plaintiff's attempt to suspend it because certain

documents had yet to be produced, when plaintiff did not seek to
resume the deposition, or any other related relief, until trial).

MMG argues that it was the defendants who bore "the initial
burden of producing a copy of the video as part of their expert
disclosure."  It is true that Rule 26(a)(2)(B)(iii) requires an
expert report to contain "any exhibits that will be used to
summarize or support" the expert's opinions.  There is no
indication, however, that the omission of a copy of the video
from Sacco's report was anything but inadvertent.  In any event,
Sacco brought the video to the deposition with him, which gave
MMG's counsel a chance to review it during a recess (though he
chose not to avail himself of that opportunity) and rendered
Sacco's failure to include a copy of the video with his report
harmless under Rule 37(c)(1).  See Bartlett v. Mut. Pharm. Co.,
742 F. Supp. 2d 182, 189-90 (D.N.H. 2010) (refusing to prevent an
expert witness from testifying at trial despite his failure to
disclose his prior testimony in his expert report, because a
transcript of the testimony was produced at his deposition).

While it would have been better for the defendants to honor
their agreement to produce a copy of the video in a more timely
fashion, their delay in doing so does not entitle MMG to re-open
Sacco's deposition or, for that matter, any other relief.  MMG's
motion to re-open Sacco's deposition is denied.

15

## II.  Reports of other fires involving similar products

The defendants seek to prevent MMG from making any reference at trial to other fires allegedly caused by similar Samsung products.  The defendants argue that the only evidence of these other fires is in the form of postings on third-party Internet sites, which are inadmissible hearsay.  See Fed. R. Evid. 801, 802.  The defendants further argue that, the hearsay problem aside, these postings are not relevant, see Fed. R. Evid. 401, because they do not show that the fires they described "occurred under circumstances substantially similar to those at issue in the case at bar," Moulton v. Rival Co., 116 F.3d 22, 26-27 (1st Cir. 1997) (quotation marks omitted), or, at a minimum, that the postings' prejudicial effect substantially outweighs any probative value, see Fed. R. Evid. 403.

In response, MMG argues that it does not seek to introduce the postings for the truth of the matter they assert, i.e., that similar Samsung products caused fires, but "to impeach the defendants' witnesses," particularly Sacco.  MMG points out that Sacco relied on "the data from Samsung indicating that there are no other reports of fire involving" the company's product in reaching his conclusion that it did not cause the fire at issue here.  Thus, MMG explains, "[e]vidence that other DVD player

16

fires may have existed, but that Sacco failed to look into them, challenges his credibility."

Rules 703 and 705 of the Federal Rules of Evidence govern the use, at trial, of otherwise inadmissible information that an expert witness has relied upon--or ignored--in reaching his opinions.  Rule 703 allows an expert witness to base his or her opinion on inadmissible facts or data, and allows their disclosure to the jury "if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect."  Rule 705 allows an expert witness to "state an opinion--and give the reasons for it--without first testifying to the underlying facts or data," adding that the expert "may be required to disclose those facts or data on cross-examination."  Under this rule, of course, the cross-examiner is "under no compulsion to bring out any facts or data except those unfavorable to the opinion."  Fed. R. Evid. 705 advisory committee's note (1972).

Thus, as one court has colorfully explained, "Rule 703 creates a shield by which a party may enjoy the benefit of inadmissible evidence by wrapping it in an expert's opinion," while "Rule 705 is the cross-examiner's sword, and, within very broad limits, he may wield it as he likes."  United States v.

17

A & S Council Oil Co., 947 F.2d 1128, 1135 (4th Cir. 1991).  But these limits, while broad, are limits just the same.  So, though a cross-examiner may employ inadmissible information "as a way of suggesting limits to the information that the expert relied on," the cross-examiner's "questions must themselves reflect facts, or at least creditable information that justify [*sic*] the questions."  3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 7:24 (3d ed. 2007); see also In re Air Disaster at Lockerbie, Scotland, 37 F.3d 804, 825 (2d Cir. 1994) (upholding court's refusal to allow cross-examination of experts as to alternative theories "absent a good-faith basis to believe those theories had evidentiary support").

    Accordingly, following the final pre-trial conference in this matter, the court ordered MMG to "file a brief submission showing its good-faith basis for cross-examining the defendants' expert witness as to his knowledge of other particular fires allegedly caused by the defendants' product."  Order of May 22, 2013.  The filing that MMG made in response consists of five different postings submitted to third-party consumer websites (e.g., amazon.com, pricegrabber.com, AVForums.com), purportedly by consumers who have used Samsung home theater systems.  As an initial matter, none of these systems had the same model number as the system at issue in this case.  While MMG states that

18

Sacco's opinion "is predicated on the assertion that the home theater system at issue in this case," model number HT-Q45, "uses the same power supply devices as the HT-Q40," the significance of this statement is unclear, because none of the postings refers to a home theater system with model number HT-Q40 either.  All of them, in fact, refer to other model numbers (HT-C6500, HT-X70, HT-X200, HT-TX75, and, in one case, the SWA3000, which is not even a home theater system, but an amplifier).  By and large, the postings also fail to identify the circumstances of the alleged fire in any detail (two say simply that the unit "caught fire," while others offer cursory descriptions of "flames" or "smoke").  Furthermore, only one of the postings identifies its author by a full name; the others were submitted under simply a first initial and last name, pseudonymously ("SECTOR SE7EN"), or anonymously.

Based on these shortcomings, the court rules that the web postings complaining of fires with other Samsung products do not constitute "creditable information" that could justify cross-examining Sacco as to his "fail[ure] to look into" them in developing his opinion that the Samsung home theater unit did not cause the fire in this case.  Indeed, it requires little elaboration to explain why effectively anonymous complaints posted to third-party websites are not "creditable."  It is also significant that Thomas, MMG's expert witness, did not rely on

these kinds of materials in reaching his conclusion that the Samsung home theater did cause the fire at issue here.

Even assuming, <u>dubitante</u>, that these on-line postings gave MMG a good-faith basis for cross-examining Sacco as to his failure to look into them, "the court may exercise its discretion under Fed. R. Evid. 403" to restrict cross-examination of an expert with inadmissible information "if the danger is too large that the jury will misuse it in damaging ways." 3 Mueller & Kirkpatrick, <u>supra</u>, § 7:24; <u>see also</u> A & S, 947 F.2d at 1135. Here, that danger is substantial, and warrants exclusion of any reference to the reports in light of their low probative value.

As just noted, there is no reason to believe that, in deciding whether a particular product started a fire, any responsible investigator would rely on a handful of anonymous on-line complaints about other products made by the same manufacturer, so the postings have little if any probative value as to the reliability of Sacco's conclusion.  On the other hand, the potential prejudicial effect of these postings is great, due to the risk that the jury (despite an instruction to consider them only as to the reliability of Sacco's opinions, <u>see</u> Fed. R. Evid. 105) may improperly consider them as substantive evidence that similar Samsung products caused fires and, in turn, that the Samsung HT-Q45 caused the fire at issue here.  This prejudice is

20

worsened by the defendants' inability to rebut that inference, because the postings, again, are effectively anonymous and describe incidents that occurred several years ago, making it more or less impossible for the defendants to investigate them and develop facts in rebuttal.  (While the author of one of the postings claims to have brought her complaint to Samsung, MMG has not proffered any evidence that Samsung was previously made aware of any of these incidents.)  Because the prejudicial effect of the postings substantially outweighs any probative value, they are inadmissible under Rule 403.  The defendants' motion to prevent MMG from referring to the postings at trial is granted.

### III. Long's deposition

Finally, MMG moves to prevent the defendants from using Long's deposition transcript at trial.  As noted at the outset, MMG retained Long to investigate the fire scene, which he did by visiting the scene with his colleague, Gary Simard, several days after the fire.  In early January 2013, the defendants took the deposition of Long, whom MMG had identified as an expert witness. The defendants later moved to strike this designation, arguing that Long had failed to provide an expert report and that, in any event, whatever opinion testimony he could give would be cumulative to Simard's.  In response, MMG filed a "partial

objection," agreeing that "Long will not offer expert opinion
testimony at trial," but maintaining that he could testify as
fact witness "about his observations at the fire scene,
including, but not limited to the collection and retention of
evidence."  This is an issue in the case because the defendants
have accused Long and Simard of "mishandling" evidence at the
scene, incorporating this charge into a spoliation defense they
intend to pursue at trial.[5]

Consistent with its response to the defendants' motion to
strike Long's expert designation, MMG listed Long as a witness on
its final pretrial statement, filed on May 3, 2013.  MMG's final
pretrial statement also claimed "the right to read into evidence
the deposition testimony of any witness who has been deposed in
this litigation," and announced that "[s]ome witnesses may
testify via videotaped trial deposition," including Long.

In fact, the parties agreed to take a videotaped deposition
of Long on May 23, 2013, for use at trial.  On May 20, 2013,
however, MMG notified the defendants by email that the deposition
was cancelled.  Counsel for the defendants spoke to counsel for

---

[5]In fact, the defendants have filed a motion in limine
seeking a jury instruction on spoliation.  As discussed at the
final pretrial conference, this motion is denied without
prejudice to the defendants' ability to request such an
instruction at the appropriate time during trial.

MMG the next day, May 21, 2013, announcing the defendants'
intention to use portions of Long's January 2013 deposition at
trial.  Counsel for MMG stated its objection to that procedure.
The parties reiterated these positions at the final pretrial
conference with the court later that same day.

During that discussion, counsel for MMG renewed his offer to
produce Long for a videotaped deposition prior to trial, but
counsel for the defendants declined, saying he intended to use
portions of Long's January 2013 deposition at trial instead.
Counsel for MMG objected to this approach because, while its
counsel was present at that deposition, he had not asked any
questions of Long.  Counsel for MMG also stated, however, that
Long would be away on vacation during the trial, which, following
discussions at the final pretrial conference, was scheduled for
the week of June 10, 2013.  The court stated its preliminary view
that this made Long "unavailable" as a trial witness, entitling
the defendants to use his deposition at trial under Rule 32 of
the Federal Rules of Civil Procedure.  The court also stated that
if MMG wanted another chance to question Long, it should notice
his videotaped deposition to take place before trial, and counsel
for the defendants could decide whether or not to attend.

Rather than doing that, MMG filed a motion to prevent the
defendants from using Long's January 2013 deposition at trial.

Despite MMG's counsel's statement at the final pretrial conference that Long would be away on vacation during the trial, the motion asserts that "Long is not unavailable."  This is so, the motion explains, because MMG "offered to produce Long for a trial deposition, which the defendants refused."  While that is an accurate account of the exchange at the final pretrial conference, it elides the fact that it was MMG--rather than the defendants--who, the day before the final pretrial conference, cancelled Long's videotaped deposition, which, until then, was scheduled to take place, by prior agreement, on May 23, 2013.

In any event, as the court noted at the final pretrial conference, one party's right to use a deposition at an upcoming trial does not depend on the other side's willingness to make the witness "available" for further deposition prior to trial.  The use of a deposition at trial is governed by Rule 32 of the Federal Rules of Civil Procedure.  Rule 32(a)(1) provides that "[a]t a hearing or trial, all or part of a deposition may be used against a party" on a number of specified conditions:  (A) that "the party was present or represented at the taking of the deposition," (B) that "it is used to the extent that the deposition would be admissible under the Federal Rules of Evidence if the deponent were present and testifying," and

(C) "the use is allowed by Rule 32(a)(2) through (8)."  Under one of those provisions, "[a] party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." Fed. R. Civ. P. 32(a)(4)(B).

The court takes MMG's counsel's statement at the final pretrial conference that Long will be away on vacation during the trial as an admission that he will be more than 100 miles away from this courthouse and, indeed, MMG has not disputed this, in its motion or otherwise.  Instead, MMG argues that "[i]mplicit in Rule 32 is that a party seeking to read the deposition of an 'unavailable' witness must exercise reasonable diligence to secure the witness's appearance at trial."

The court of appeals, however, has squarely rejected this reading of Rule 32(a)(4)(B), i.e., "that a witness, though at the stated distance from the place of trial, is not unavailable if, with reasonable efforts, he might be persuaded to attend." Daigle, 14 F.3d at 691.[6]  As Daigle explains, "the language of

_____

[6]To support its reading of the rule, MMG relies solely on cases from outside of this circuit.  It is instructive (though, in light of Daigle, not necessary) to note that these cases do not consider the language of Rule 32(a)(4)(B), but that contained

the rule does not permit a court to read this sort of qualification into it.  Distance is the decisive criterion." Id. Here, as just discussed, this criterion has been satisfied by MMG's admission that Long will be away on vacation during the trial, so the defendants are entitled to use his deposition at trial under Rule 32(a)(4)(B).

MMG also objects to the defendants' use of Long's deposition at trial because their pretrial statement did not list him as a witness, or his deposition as one that would be read into evidence.  But MMG listed Long (who, after all, is an expert it retained) as a witness in its pretrial statement, which also identified him as a witness whose "videotaped trial deposition" would be used at trial.  Though the defendants had agreed to this procedure, MMG backed out of the agreement the day before the final pretrial conference, when it notified the defendants that Long's videotaped deposition was cancelled.  In response, the defendants notified MMG the very next day that they intended to use Long's January 2013 deposition at trial.  The fact that they did not announce this intention earlier is completely understandable, if not inevitable, because, until just the day

---

in a different subsection, Rule 32(a)(4)(D), which provides that a witness is "unavailable" if "the party offering the deposition could not procure the witness's attendance by subpoena."

26

before that, the defendants thought they would be able to use Long's videotaped deposition at trial.  This court cannot permit MMG to decide unilaterally to cancel that deposition the day before the final pretrial conference, then to claim surprise at MMG's announcement, the very next day, of its intention to use Long's January 2013 deposition at trial instead (particularly when MMG could have eliminated any resulting disadvantage by proceeding with the videotaped deposition of Long after all, but elected not to do so).

In short, any prejudice to MMG in the use of Long's January 2013 deposition at trial is of MMG's own creation.  MMG's motion to prevent the defendants from using that deposition at trial is denied.[7]  On or before **5 p.m. on June 5, 2013,** the defendants shall serve MMG with their designations of the portions of Long's testimony they intend to use at trial.  On or before midnight on **June 6, 2013,** MMG shall serve the defendants with its objections to those designations, if any, as well as any counter-designations.  The defendants shall be prepared to state their objections to the counter-designations, if any, on **June 7, 2013,** following jury selection.  The court anticipates ruling that day

---

[7]In light of this ruling, the defendants' motion to amend their final pretrial statement to reference Long's deposition is denied as moot.

27

on any objections to Long's deposition testimony, so that the parties may prepare their opening statements accordingly.

For the foregoing reasons, the defendants' motion to strike Long's expert designation[8] is GRANTED by assent, the defendants' motion to exclude any reference to Internet postings about alleged fires in other Samsung products[9] is GRANTED, the defendants' motion to exclude evidence of Thomas's alleged burn testing[10] is GRANTED, the defendants' motion for a jury instruction on spoliation[11] is DENIED without prejudice to renewal at the appropriate point at trial, MMG's motion to prevent the use of Long's January 2013 deposition at trial[12] is DENIED, and the defendants' motion to amend their final pretrial statement[13] is DENIED as moot.

---

[8]Document no. 57.

[9]Document no. 64

[10]Document no. 65.

[11]Document no. 68.

[12]Document no. 76.

[13]Document no. 80.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  June 5, 2013

cc:  Charles W. Grau, Esq.
     Lisa Hall, Esq.
     Michael S. McGrath, Esq.
     Robert W. Upton, II, Esq.
     Thomas DeMicco, Esq.
     Christopher P. Flanagan, Esq.

29